UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Nautilus Insurance Company

    v.                                       Civil No. 1:20-cv-01053-JL
                                                          Opinion No. 2021 DNH 130

Washington Ferreira, et al.

**MEMORANDUM ORDER**

This insurance coverage dispute turns on whether one or more policy endorsements exclude coverage for damages claims in an underlying tort lawsuit. The underlying suit came about after Antonio DeSouza suffered injuries and death from a gas explosion that occurred at a residential construction site. The site was part of the "New Boston Subdivision" project, owned by New Boston Subdivision Holdings ("New Boston Holdings"). In the underlying suit, Washington Ferreira, the Administrator of DeSouza's Estate, seeks damages from New Boston Holdings and other entities under a variety of theories for DeSouza's alleged wrongful death. Nautilus Insurance Company, the plaintiff here, provided commercial general liability insurance to New Boston Holdings for the project.

Through this lawsuit, Nautilus seeks a declaration that the Estate's (a defendant here) claims against New Boston Holdings (also a defendant here) in the underlying lawsuit are not covered by the insurance policy and that Nautilus does not have a duty to defend or otherwise provide coverage to New Boston Holdings. This court has jurisdiction under 28 U.S.C. § 1332(a) (diversity) because Nautilus is an Arizona corporation, Ferreira is a citizen of New

Hampshire, New Boston Holdings is a New Hampshire limited liability company and its sole member resides in New Hampshire, and the amount in controversy exceeds $75,000.[1]

Nautilus now moves for summary judgment, arguing that the damages claims in the underlying lawsuit are not covered under its policy with New Boston Holdings, and it is under no obligation to defend New Boston Holdings in that lawsuit. After considering the parties' submissions and hearing oral argument, the court grants Nautilus' motion. The policy's "L205" endorsement excludes coverage for the Estate's bodily injury claims because DeSouza was an employee of a subcontractor of New Boston Holdings, and his injuries arose out of directly or indirectly performing duties related to the conduct of New Boston Holdings' business. The court further finds that there are no genuine disputes of fact as to the nature of New Boston Holdings' business that would preclude summary judgment.

## I. Applicable legal standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if it could reasonably be resolved in either party's favor at trial by a rational fact-finder, and "material" if it could sway the outcome under applicable law. Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010). In analyzing a summary judgment motion, the court "views all facts and draws all reasonable inferences in the light most favorable to the non-moving party." Id.

---

[1] See New Boston Holdings' Affidavit of Jurisdictional Facts (doc. no. 24), at ¶ 2.

## II.   Background

The basic facts are undisputed.[2]  On September 19, 2017, Antonio DeSouza suffered serious bodily injuries and died following a propane gas explosion in the basement of a home in the New Boston Subdivision residential construction project in New Boston, New Hampshire. At the time of the explosion, New Boston Holdings owned the New Boston Subdivision project. DeSouza was working in the home for his employer, USA Painting and Cleaning, one of the project's subcontractors.

Defendants allege that New Boston Holdings was created solely for the purpose of investing in the New Boston Subdivision project.  Other than its investment in the New Boston Subdivision, Defendants allege that New Boston Holdings conducts no other business and has no employees.[3]  New Boston Holdings hired a general contractor (John Santo General Contracting, LLC) to develop and construct the New Boston Subdivision.

At the time of the events in question, New Boston Holdings was insured by Nautilus under a commercial general liability insurance policy.  Under the policy, Nautilus agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily

---

[2] See Nautilus Mem. of Law in Supp. of Mot. for Summ. J. (doc. no. 16-1), at 2 (statement of undisputed facts); Estate Mem. of Law in Supp. of Opp. to Mot. for Summ. J. (doc. no. 18-1), at 1 ("DeSouza agrees with the Plaintiff's Statement of Undisputed Facts"); New Boston Holdings Mem. of Law in Supp. of Opp. to Mot. for Summ. J. (doc. no. 19-1), at 1 ("New Boston disputes neither the facts asserted by Nautilus nor the additional facts asserted by the Administrator.").

[3] Defendants asserted these additional facts in their objections to Nautilus's motion for summary judgment and argue that they are both material and undisputed.  Nautilus contends that allegations in the Estate's underlying complaint in the DeSouza Lawsuit contradict these facts, including the allegation that New Boston Holdings "was the owner and developer" of the New Boston Subdivision, see Doc. no. 1-1, at ¶ 8, and that it "retained the authority to order changes in the work, halt the work and otherwise exert authority over [its] agents relative to the construction of" the project.  Id. at ¶ 77.

injury' or 'property damage' to which this insurance applies."[4] Nautilus further agreed to "defend the insured against any 'suit' seeking those damages."[5] Insurance under the policy applies to "bodily injury" only if that injury "is caused by an 'occurrence' that takes place in the 'coverage territory.'"[6] Under the policy, an "occurrence" is "an accident, including continuous or repeated exposure to substantially the same harmful conditions."[7] Insurance under the policy does not apply to:

> "Bodily injury" to:
>
> (1) An "employee" of the insured arising out of and in the course of:
>     (a) Employment by the insured; or
>     (b) Performing duties related to the conduct of the insured's business; or
> (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.
>
> This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.
>
> This exclusion does not apply to liability assumed by the insured under an "insured contract". ("Exclusion e")[8]

The policy also contains several endorsements, including exclusion endorsement "Form L205", titled "Exclusion – Injury to Employees, Contractors, Volunteers and Other Workers", which replaced Exclusion e. The top of the first page of the L205 endorsement states that "THIS

---

[4] Nautilus Policy, Ex. B to Nautilus Complaint (doc. no. 1-2), at 10.

[5] Id.

[6] Id.

[7] Id. at 24.

[8] Doc. no. 1-2, at 11.

4

ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY."  The body of the endorsement provides, in relevant part, that:

> This insurance does not apply to . . . "Bodily injury" to:
>
> (1) "Employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors of any insured; or
>
> (2) Any insured's contractors', subcontractors', or independent contractors' "employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors
>
> arising out of and in the course of:
>
> > (a) Employment by any insured; or
> > (b) Directly or indirectly performing duties related to the conduct of any insured's business; or
>
> (3) The spouse, child, parent, brother or sister of that "employee", "leased worker", "temporary worker", "volunteer worker", statutory "employee", casual worker, seasonal worker, contractor, subcontractors, or independent contractor arising out of Paragraph (1) or (2) above.
>
> This exclusion applies:
>
> (1) Regardless of where the:
>
> > (a) Services are performed; or
> > (b) "Bodily injury" occurs; and
>
> (2) Whether any insured may be liable as an employer or in any other capacity; and
>
> (3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.
>
> . . .
>
> All other terms and conditions of this policy remain unchanged.[9]

---

[9] Doc. no. 1-2, at 39.

5

The policy also contains exclusion endorsement "Form L282," titled "Exclusion – Contractors and Subcontractors." The L282 endorsement contains the same capitalized warning as the L205 endorsement and modifies the scope of commercial general liability coverage under the policy. The L282 endorsement states in full:

> The following exclusion is added to 2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability, Coverage B - Personal And Advertising Injury Liability and Coverage C – Medical Payments:
>
> This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of work performed by any contractor or subcontractor whether hired by or on behalf of any insured, or any acts or omissions in connection with the general supervision of such work.
>
> All other terms and conditions of this policy remain unchanged.[10]

In April 2020, the Estate filed a wrongful death action in the Hillsborough County Superior Court against New Boston Holdings, John Santo General Contracting, and the project's other subcontractors (the "DeSouza Lawsuit"). The DeSouza Lawsuit asserts three causes of action against New Boston Holdings: (1) Count 1 for negligence; (2) Count 7 for vicarious liability for the negligence of its contractors or subcontractors; and (3) Count 10 for non-delegable duty.

In Count 1, the Estate alleges that:

> At all times relevant to this action, the Defendant, New Boston, its agents, servants and/or employees, had a duty to provide a reasonably safe workplace for workers engaged in construction of the Premises; a duty to design the Premises in a non-negligent fashion; a duty to construct the Premises, including appurtenances such as the gas utility and piping, installation of the furnace and conversion kit, installation of the underground propane tank and filling of the tank with propane gas prior to the explosion, without negligence; a duty to supervise employees and contractors who were employed to construct the Premises, including appurtenances such as the gas utility and piping, installation of the furnace and conversion kit, installation of the underground propane tank and filling of the tank with propane gas, in a manner that would not allow undetectable explosive gas to

---

[10] Doc. no. 1-2, at 50.

accumulate in the basement of the Premises; a duty to put in place a system or detector that would audibly warn any occupant of the Premise of the build-up of undetectable explosive gas in the basement of the Premises; and, to otherwise take such action as would result in the Premises to be constructed without negligence and in a manner that would allow safe occupancy, free from explosion and fire.[11]

In Count 7, the Estate alleges that New Boston Holdings is vicariously liable for the acts or omissions of various contractors or subcontractors for the project. Specifically, it argues:

> 77. The Defendants, Santo, Favreau, Sarette, and/or Ciardelli, at all times relevant to this action, were acting as the agent for the Defendant, New Boston. At all relevant times, the Defendants, Santo, Favreau, Sarette, and/or Ciardelli, were working under a contract with the Defendant, New Boston, that authorized them to do such work with the consent of the Defendant, New Boston. Further, the Defendant, New Boston retained the authority to order changes in the work, halt the work and otherwise exert
> authority over said agents relative to the construction of said Premises.
>
> 78. Relative to any negligent act or omission that contributed to cause the incident and resulting injury and death to the Decedent described herein attributed to the Defendants, Santo, Favreau, Sarette, and/or Ciardelli, the Defendant, New Boston, is in fact vicariously liable for all harm is caused by such negligence.[12]

In addition, the Estate asserts a claim in Count 10 against New Boston Holdings for non-delegable duty. In support of that claim, it alleges:

> 87. The Defendant, New Boston, as the owner and developer of the property including the Premises, had a non-delegable duty to cause the property and Premises to be designed and constructed in a manner that did not pose a safety hazard to the Decedent, such that it would not allow undetectable explosive gas to accumulate in the basement of the Premises as a result of the way the gas lines/piping were installed, the installation of the furnace and/or the furnace conversion kit, and/or the installation of the underground propane tank and filling of the tank with propane gas. Having chosen to build the property with gas utilities, the Defendant, New Boston, had a duty, that could not be delegated to any contractor, to ensure that the gas utility was installed without negligence and to otherwise retain responsibility for the construction of said utility to ensure that it was not negligently constructed such that it would allow undetectable explosive gas to accumulate in the basement of the Premises. As a result of negligent construction undetectable explosive gas could, and did, accumulate in the

---

[11] DeSouza Lawsuit Complaint, Ex. A to Nautilus Complaint (doc. no. 1-1) ¶ 28.

[12] Doc. no. 1-1, at ¶¶ 77 and 78.

7

basement of the Premises causing the incident and resulting injuries and death to the Decedent. Further, these non-delegable duties, arise in part, from the fact that the failure to properly install a gas utility poses a significantly increased risk of harm to occupants of a structure associated with the gas utility.

88. The Defendant, New Boston, negligently breached one or more of the aforementioned non- delegable duties and was otherwise negligent relative to the installation of the aforementioned gas utility, including the installation of the gas lines/piping, the installation of the furnace and/or the furnace conversion kit, and/or the installation of the underground propane tank and filling of the tank with propane gas, such that undetectable explosive gas accumulated in the basement of the Premises and exploded while the Decedent was present.[13]

After it received the DeSouza Lawsuit from its insured, Nautilus hired counsel to defend New Boston Holdings in the lawsuit, while reserving its rights under the L205 and L282 endorsements.[14] The DeSouza Lawsuit remains pending in Hillsborough County Superior Court.

Nautilus filed this lawsuit in October 2020 against the Estate and New Boston Holdings. It seeks declaratory relief, under N.H. RSA 491:22 and 28 U.S.C. § 2201, that it has no duty to defend or otherwise insure New Boston Holdings against the claims in the DeSouza Lawsuit. Nautilus now moves for summary judgment on its two declaratory judgment claims.

**III.** **Analysis**

The parties agree that New Hampshire law controls this dispute. Therefore, the insurer, Nautilus, bears the burden of proving that the Estate's claims are not covered under the policy. See RSA 491:22-a ("In any petition under RSA 491:22 to determine the coverage of a liability insurance policy, the burden of proof concerning the coverage shall be upon the insurer whether he institutes the petition or whether the claimant asserting the coverage institutes the petition."); Carter v. Concord. Gen. Mut. Ins. Co., 155 N.H. 515, 517 (2011). Nautilus argues that either the

---

[13] Doc. no. 1-1, at ¶¶ 87 and 88.

[14] Doc. no. 16-1, at ¶ 13.

L205 endorsement or the L282 endorsement, or both, exclude coverage for the Estate's bodily injury claims against New Boston Holdings and absolve Nautilus from its duty to defend New Boston Holdings in the DeSouza Lawsuit. The court agrees that the L205 endorsement excludes coverage and addresses the parties' arguments as to each endorsement in turn.

Under New Hampshire law, "an insurer's obligation to defend its insured is determined by whether 'the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the policy.'" Todd v. Vermont Mut. Ins. Co., 168 N.H. 754, 759 (2016) (quoting N. Sec. Ins. Co. v. Connors, 161 N.H. 645, 650 (2011)). In considering whether a duty to defend exists based on the sufficiency of the pleadings, the court considers "the reasonable expectations of the insured as to its rights under the policy." Id. (citing Connors, 161 N.H. at 650). An insurer's obligation is not merely to defend in cases of perfect allegations, "but also in cases where, by any reasonable intendment of the pleadings, liability of the insured can be inferred, and neither ambiguity nor inconsistency in the underlying" complaint "can justify escape of the insurer from its obligation to defend." Id. (quoting Connors, 161 N.H. at 650). The court resolves any doubt as to whether the complaint against the insured alleges a liability of the insurer under the policy in the insured's favor. Id.

The interpretation of insurance policy language is a question of law for the court to determine. Rivera v. Liberty Mut. Fire Ins. Co., 163 N.H. 603, 606 (2012). The court construes the policy as a whole and objectively; "where the terms are clear and unambiguous, [the court] accord[s] the language its natural and ordinary meaning." Barking Dog, Ltd. v. Citizens Ins. Co. Of Am., 164 N.H. 80, 83 (2012). Where disputed terms are not defined in the policy, the court construes them "in context, and in the light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured." Great Am. Dining v. Philadelphia Indem. Ins.

Co., 164 N.H. 612, 625 (2013). If policy terms are clear and unambiguous, the "search for the parties' intent is limited to the words of the policy." White v. Vt. Mut. Ins. Co., 167 N.H. 153, 157 (2014). "Ambiguity exists if reasonable disagreement between contracting parties leads to at least two interpretations of the language." Id. (quoting Colony Ins. Co. v. Dover Indoor Climbing Gym, 158 N.H. 628, 630 (2009)). "If one of the reasonable meanings of the language favors the policyholder, the ambiguity will be construed against the insurer." Colony, 158 N.H. at 630. However, the court will not "perform amazing feats of linguistic gymnastics to find a purported ambiguity[,]" id. at 630-31, and will "enforce a policy provision that limits the insurance company's liability when the policy language is clear and unambiguous." Merch. Mut. Ins. Co. v. Laighton Homes, Inc., 153 N.H. 485, 487 (2006).

### A. The L205 endorsement

The L205 endorsement excludes coverage for bodily injury to employees, contractors, subcontractors, or independent contractors of the insured, as well as any employees of the insured's contractors or subcontractors, "arising out of and in the course of . . . [d]irectly or indirectly performing duties related to the conduct of any insured's business." Here, while DeSouza was not employed by New Boston Holdings, there is no dispute that he was employed by New Boston Holdings' subcontractor, USA Painting and Cleaning.

The question is thus whether DeSouza's injuries arose out of and in the course of his directly or indirectly performing duties related to the conduct of New Boston Holdings' business. Nautilus argues, based on the factual allegations in the underlying complaint, that New Boston Holdings' business was owning, investing in, developing, and overseeing the construction of the

10

subdivision project, and DeSouza's injuries arose out of performing duties related to that business.[15]

Defendants contend that the phrase "insured's business" is ambiguous, which precludes this court from finding as a matter of law that the L205 endorsement applies. The policy does not define "insured's business," so the court must construe this term "in context, and in the light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured." Great Am. Dining, 164 N.H. at 625. Defendants do not propose an alternative interpretation of the term aside from its ordinary meaning. Instead, Defendants appear to argue that there is a factual dispute about the nature of New Boston Holdings' business, not that the policy term itself is ambiguous. They claim – based on an affidavit of a New Boston Holdings representative prepared in connection with the DeSouza Lawsuit – that New Boston Holdings was created for the purpose of investing in the New Boston Subdivision project and has no employees or business aside from investing in this project. Defendants further argue that New Boston Holdings owned the project, financed the project, invested in the project, and hired the general contractor for the project.[16] Defendants therefore maintain that there is a dispute as to whether New Boston Holdings is in the business of developing real estate.

Nautilus counters that even if New Boston Holdings' "business" was characterized as investing in this project, the construction of homes in the subdivision was integral to this

---

[15] Doc. no. 1-1, at ¶¶ 8, 28, 77, 87.

[16] Defendants also posit, without evidentiary support or any citations to the record, that New Boston Holdings did not perform any work on the project and was not present at the job site at any time during construction. Doc. no. 18-1, at 6. The court cannot rely on these unsupported allegations in deciding Nautilus' summary judgment motion. See Sanchez-Rodriguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 9 (1st Cir. 2012) ("[T]he party seeking to avoid summary judgment must be able to point to specific, competent evidence to support his [or her] claim.").

business, and DeSouza's injuries (which occurred during construction of a home in the subdivision) were therefore related to New Boston Holdings' business. The court agrees with Nautilus. Part of New Boston Holdings' business as the main project investor and owner of the project site was ensuring that the project was built. Likewise, the policy itself describes New Boston Holdings' business as "34 Acres Land Under Development," which suggests that New Boston Holdings was involved in the development of the project.[17] Whether characterized as owner and investor, or owner, investor, and developer, no rational factfinder could conclude that DeSouza's work in the home where the explosion occurred did not have some connection or association with, or concern or pertain to, New Boston Holdings' business. See Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992) (observing that the "ordinary meaning of [the term 'relating to'] is a broad one – 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'") (quoting Black's Law Dictionary § 1158 (5th ed. 1979)).

      Defendants' attempt to create a factual dispute about the nature of New Boston Holdings' business is unavailing, as it directly contradicts the related factual allegations in the underlying DeSouza Lawsuit, which this court must rely upon to determine coverage. See N. Sec. Ins. Co., 161 N.H. at 653 ("[A] court must compare the policy language with the facts pled in the underlying suit to see if the claim falls within the express terms of the policy (quoting State Farm Ins. Co. v. Bruns, 156 N.H. 708, 713 (2008)). Those facts in the underlying suit describe New Boston Holdings as the developer and owner of the project, with control over contractors and subcontractors, "authority to order changes in the work, halt the work and otherwise exert authority over said agents relative to the construction" of the project, and corresponding legal

---

[17] Doc. no. 1-2, at 2, 9.

duties of oversight and supervision. The Estate cannot rely on these allegations to hold New Boston Holdings liable in the underlying suit, but then disclaim them here in order to avoid the exclusions in the policy. Cf. Scott v. Harris, 550 U.S. 372, 380 (2007) (noting that where the non-movant's factual assertion "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"); see also Statchen v. Palmer, 623 F.3d 15, 18 (1st Cir. 2010) (noting that a court need not accept "incredible assertions" by the non-moving party).

Based on the facts alleged in the DeSouza Lawsuit relative to New Boston Holdings' business, DeSouza's bodily injuries arose out of and in the course of his directly or indirectly performing duties related to New Boston Holdings' business, and the L205 endorsement therefore excludes coverage for any legal claims or damages resulting from those injuries. The Estate's claims against New Boston Holdings in the underlying suit fall squarely within the coverage exclusion in the L205 endorsement.

Defendants also generally argue – without reference to either endorsement – that the Estate's claim for non-delegable duty against New Boston Holdings precludes summary judgment for Nautilus. They contend that because this claim arises from the direct acts or omissions of the insured, and not the work of a contractor or subcontractor, neither exclusion applies. The L205 endorsement, however, excludes coverage for bodily injury to employees of the insured or its contractors or subcontractors arising out of work relating to the insured's business. Whether the L205 endorsement applies does not appear to depend on the type of claim asserted in the underlying suit. See N. Sec. Ins. Co., 161 N.H. at 653 ("[A] court must compare the policy language with the facts pled in the underlying suit to see if the claim falls within the express terms of the policy; the legal nomenclature the plaintiff uses to frame the suit is

13

relatively unimportant." (emphasis added) (quoting State Farm Ins. Co. v. Bruns, 156 N.H. 708, 713 (2008)); Titan Holdings Syndicate, Inc. v. City of Keene, 898 F.2d 265, 271 (1st Cir.1990) (same) (citing United States Fidelity & Guar. Co., Inc. v. Johnson Shoes, Inc., 123 N.H. 148, 151-52 (1983)). Moreover, the exclusion applies regardless of whether New Boston Holdings "may be liable as an employer or in any other capacity."[18] The court is not persuaded that the Estate's non-delegable duty claim alters whether the L205 endorsement applies here to exclude coverage.[19]

As there are no genuine factual disputes as to the nature of New Boston Holdings' business, the court finds as a matter of law that under the L205 endorsement there is no coverage under the policy for the Estate's claims of bodily injury in the DeSouza Lawsuit. The court further finds that Nautilus is entitled, as a matter of law, to a declaratory judgment that it has no duty to defend New Boston Holdings against the DeSouza Lawsuit.

### B. The L282 endorsement

Nautilus also argues that the Estate's claims in the DeSouza Lawsuit arise out of work performed on the project by a subcontractor, or New Boston Holdings' acts or omissions in connection with the general supervision of that work, and are thus subject to the L282 endorsement. As DeSouza was injured and killed while working on the project site for a subcontractor, Nautilus argues that his injuries arise out of this work because New Hampshire courts have interpreted "arise out of" broadly to mean "originating from or growing out of or flowing from." Merrimack School Dist. v. National School Bus Service, 140 N.H. 9, 13 (1995).

---

[18] Doc. no. 1-2, at 39.

[19] As Nautilus' counsel explained in its motion and at oral argument, the nature of this policy as a so-called "surplus lines" policy likely explains, at least in part, the breadth of the exclusions.

Because the court is granting Nautilus' motion based on the L205 endorsement, it need not address its arguments concerning the L282 endorsement. The court observes, however, that the L282 endorsement appears to exclude coverage for at least the negligence and vicarious liability claims against New Boston Holdings in the DeSouza Lawsuit. And given the broad definition of "arise out of" used by New Hampshire courts, if it was required to address this question, the court would likely find that the Estate's non-delegable duty claim also originates from, grows out of, or flows from DeSouza's work as a subcontractor on the project site, or "any acts or omissions in connection with [New Boston Holdings'] general supervision of the work of its contractors or subcontractors.[20]  See Merrimack School Dist., 140 N.H. at 13 (observing that the phrase "arising out of" has been interpreted as a "very broad, general and comprehensive term"). The causal connection between DeSouza's injuries and his work as a subcontractor is "more than tenuous," such that no rational fact finder could conclude that his injuries do not arise from that work, regardless of the theory of liability the Estate utilizes to recover damages for those injuries. Pro Con Const., Inc. v. Acadia Ins. Co., 147 N.H. 470, 472 (2002) ("Thus, to warrant coverage arising out of Decorative Concepts' ongoing operations performed for Pro Con, the ongoing operations need not have been the proximate cause of the injuries but the causal connection between the two must be more than tenuous.") (citing Cannon v. Maine Bonding & Cas. Co., 138 N.H. 365, 366 (1994)).[21]

---

[20] Doc. no. 1-2, at 50.

[21] At oral argument, the Estate's counsel argued that because the non-delegable duty claim is a direct negligence claim against the insured, it "should be covered" by the policy. In support, she cited a recent decision from the District of Massachusetts involving insurance coverage under a Nautilus policy and the L282 exclusion. See Nautilus Insurance Co. v. DeAraujo, No. 20-CV-11508-ADB, 2021 WL 3375402 (D. Mass. Aug. 3, 2021). Putting aside the fact that the court's role in a coverage dispute is not to decide what the policy "should" cover, but to decide, based on the plain language of the policy and the factual allegations in the underlying lawsuit, what is or is not covered, the DeAraujo case does not help the defendants here. There, the insured

## IV.     Conclusion

For the reasons set forth above, Nautilus' motion for summary judgment[22] is GRANTED. The court declares that the policy does not provide coverage for the Estate's claims against New Boston Holdings in the DeSouza Lawsuit and Nautilus has no continuing duty to defend New Boston Holdings in that lawsuit, nor a duty to indemnify or otherwise insure New Boston Holdings for any settlement or judgment for the Estate in that lawsuit.[23]  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  August 19, 2021

---

(specifically, its principal) negligently operated a winch, which caused the underlying plaintiff's injury.  In other words, his direct acts negligently caused the injury.  Under this "idiosyncratic fact pattern," the court found that L282 exclusion did not apply.  Id. at *3 ("Nevertheless, because Mr. DeAraujo alleges that Mr. Teixeira, an insured under the Policy, negligently injured him while performing work on the tree removal project, the allegations in Mr. DeAraujo's state court suit can reasonably be interpreted to state a claim covered by the Policy.").  The same cannot be said here.  The Estate does not allege that New Boston Holdings' or its principals directly participated in some action that led to the explosion or performed the work that gave rise to DeSouza's injuries; instead, it simply alleges that New Boston Holdings is generally liable, by virtue of its status as "owner and developer" of the project, under a non-delegable duty theory.  Moreover, the DeAraujo case also did not involve the L205 exclusion, further limiting its relevance here.

[22] Doc. no. 16.

[23] This language is taken from Nautilus' complaint, however, if Nautilus is not satisfied with it, it may submit a proposed declaratory judgment order within 48 hours from the date this opinion issues.

cc:     Michael F. Aylward, Esq.
         Linda M. Smith, Esq.
         Maureen Counihan, Esq.
         Daniel Duckett, Esq.
         Joseph Toomey, Esq.
         Brian J. S. Cullen, Esq.